IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

KENNY AMERSON                                                           PLAINTIFF

VS.                                                  CAUSE NO. 3:09CV53-DPJ-FKB

PIKE COUNTY, MISSISSIPPI, ET AL.                              DEFENDANTS

ORDER

This civil-rights action is before the Court on Defendant Mark Shepherd's Motion for Summary Judgment [12] as to all claims asserted against him in his individual capacity. The Court, having considered the memoranda and applicable authority, finds the motion should be granted.

I.      Facts and Procedural History[1]

Plaintiff Kenny Amerson was arrested in December 2004 and held in the Pike County Jail. Although Circuit Court Judge Michael Taylor first ordered a mental evaluation of Amerson on March 14, 2005, the evaluation was not performed until December 20, 2005. Dr. Beverly Smallwood submitted a report on December 28, 2005, finding Amerson to be psychotic and likely schizophrenic and recommending inpatient treatment at a state hospital to restore his competency to stand trial. Pl.'s Resp. [30] Ex. C. On April 18, 2006, after reviewing Smallwood's report, Judge Taylor found Amerson to be a danger to himself and mentally incompetent to stand trial or to make a rational defense, and ordered Amerson be transported to the Mississippi State Hospital at Whitfield for treatment. Pl.'s Resp. [30] Ex. D.

---

[1] The facts are presented in the light most favorable to Plaintiff and largely come from Plaintiff's Response [30] and supporting exhibits and Defendant's Motion [12] and supporting exhibits.

Defendant Pike County Sheriff Mark Shepherd stated in his affidavit that Amerson "was transported to the Mississippi State Hospital at Whitfield, but was later returned to the Pike County facility due to a lack of available housing accommodations at the hospital." Def.'s Mot. Summ. J. [12] Ex. G. But Amerson submitted evidence that he was never a patient at Whitfield and produced statistics from Whitfield indicating that the hospital was not at full capacity. Pl.'s Resp. [30] Ex. G. It is undisputed that Amerson remained at the Pike County Jail until the charges against him were dropped in March 2007, though the parties dispute whether he received adequate medical treatment during this time.

Shepherd's motion sought summary judgment on Amerson's § 1983 and separate state-law claims against Shepherd in his individual capacity based on qualified immunity. Plaintiff responded and alternatively moved for a Rule 56(f) continuance to allow more immunity-related discovery [33]. In a prior Order [35], this Court found Shepherd was immune from Amerson's state-law claims but granted Amerson's Rule 56(f) motion so that the record could be better developed regarding his § 1983 claims. Specifically, the Court found that discovery was appropriate to determine whether Shepherd had any personal knowledge of, or involvement in, Amerson's treatment while incarcerated. Although the Court granted Amerson time to conduct additional discovery, he eventually rested on his original response.

On December 15, 2011, the Court held an evidentiary hearing on the issue of qualified immunity, receiving testimony from Defendant Mark Shepherd. Shepherd testified that he had no personal involvement in Amerson's detention, and his only knowledge of it came from his review of records *after* the instant suit was filed. There is no record evidence sufficient to rebut Shepherd's testimony. After the hearing, the parties submitted supplemental memoranda of law

2

[58, 59], and the matter is now fully briefed. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when. . .both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such

contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.     Analysis

Amerson asserts federal claims against Shepherd premised on 42 U.S.C. § 1983 for allegedly violating Amerson's civil rights. In general terms, the claims relate to the alleged failure to provide mental-health care as directed by the state court.[2] Shepherd seeks summary judgment.

     A.     Discretionary Function

"A public official performing a discretionary function is entitled to qualified immunity in a civil action for damages, provided his conduct does not 'violate clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Here, the parties dispute whether discretion existed to leave Amerson in the Pike County Jail in the face of the state-court commitment order and thus whether qualified immunity is available as a defense. Mississippi Code section 19-25-35[3] requires sheriffs to carry out state-

---

[2] The Complaint also references an equal protection claim, but the parties have not addressed it specifically. Regardless, the claim fails for the same reasons the other § 1983 claims fail.

[3] Section 19-25-35 states:

> The sheriff . . . shall execute all orders and decrees of said courts directed to him to be executed. He shall take into his custody, and safely keep, in the jail of his county, all persons committed by order of either of said courts, or by any process issuing therefrom, or lawfully required to be held for appearance before either of them.

court orders, and in some instances that duty is not discretionary. *See Coleman v. Mississippi*, 482 So. 2d 221, 222 (Miss. 1986) (holding that duty to comply with commitment order under section 19-25-35 is "purely ministerial"). In addition, section 41-21-77 states that when so ordered, the sheriff "shall immediately deliver the respondent to the director of the appropriate facility." Miss. Code Ann. § 41-21-77 (1972). But that same statute authorizes the county to hold individuals "awaiting admission." *Id*. And when holding an individual awaiting admission to the mental-health facility, the sheriff would exercise considerable discretion with respect to the way health care is provided. *Id*.

A question of fact exists in this case whether the state mental-health facility at Whitfield denied Amerson's admission. If so, then the care provided under the statutes would appear to be a matter of discretion. Regardless, the discretionary function distinction becomes irrelevant in this case because there remains a threshold question whether Sheriff Shepherd ever violated Amerson's constitutional rights.

    B.  Liability Under Section 1983

Section 1983 creates a cause of action against those who, while acting under color of state law, violate the plaintiff's constitutional rights. 42 U.S.C. § 1983 (2006). It is well-settled that "there is no vicarious or respondeat superior liability of supervisors under § 1983." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("In a § 1983 suit . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title

---

Miss. Code Ann. § 19-25-35 (1972).

notwithstanding, is only liable for his or her own misconduct."); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) ("Under § 1983, however, a government official can be held liable only for his own misconduct.") (citing *Iqbal*, 129 S.Ct. at 1949).

Thus, "[a] supervisory official may be held liable [under § 1983] . . . if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation omitted).

> A supervisor may also be liable for failure to supervise or train if: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

*Id.* (citation and quotations omitted).

In the context of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment guarantees that his "serious medical needs [will not be] met with deliberate indifference on the part of confining officials." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing cases). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Id.* at 458–59. "A prison official shows deliberate indifference if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference occurs when a defendant refuses to treat a plaintiff, ignores complaints, intentionally treats him or her incorrectly, or

engages in conduct demonstrating "a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Thus, the deliberate indifference standard presupposes some level of personal involvement by the defendant. Finally, the deliberate indifference standard applies whether the plaintiff asserts that a supervisor affirmatively participated in acts causing the alleged deprivation, adopted a policy, or failed to train or supervise. *Porter*, 659 F.3d at 446.

In this case, the record sufficiently establishes that Sheriff Shepherd had no knowledge of Amerson or his plight, and that he had no knowledge of the state-court order directing the county to transfer Amerson to the state mental facility. Accordingly, there is no evidence of affirmative participation that amounts to deliberate indifference. Moreover, Amerson offers no evidence capable of showing that Shepherd acted with deliberate indifference by implementing a constitutionally invalid policy or by failing to train or supervise. In sum, Shepherd had no personal involvement in the alleged violation and there is no basis in this record for any other avenue to supervisory liability. Yet, Amerson contends that Shepherd is individually liable under § 1983 by virtue of his title.

Amerson's position is not without some legal authority. In particular, Amerson cites Shepherd's statutory obligations under sections 19-25-69 and 19-25-35 of the Mississippi Code to enforce the Circuit Court's April 2006 Order to transfer Amerson to the state mental facility at Whitfield.[4] *See* Pl.'s Mem. [31] at 6; Pl.'s Supp. Mem. [59] at 1–3. He then buttresses these

---

[4]Mississippi Code Section 19-25-69 states, in relevant part: "The sheriff shall have charge of the . . . jail of his county, of the premises belonging thereto, and of the prisoners in said jail." Miss. Code Ann. § 19-25-69.

statutes with reported decisions from the Fifth Circuit Court of Appeals suggesting that a supervisor can be liable despite a total lack of personal knowledge or involvement.  First, in *Whirl v. Kern*, the Fifth Circuit found a sheriff liable where the plaintiff was held in jail for nine months after charges against him were dismissed, despite the fact that the sheriff had no knowledge of the plaintiff's improper detention.  407 F.2d 781, 785 (5th Cir. 1969).  The court reasoned that the sheriff was on constructive notice of the dismissal, "or alternatively, that absence of such notice was not a legal justification for Whirl's continued imprisonment."  *Id*. at 793.  Second, in *Barksdale v. King*, the court found a "causal connection" between the official's breach of a statutory duty and a constitutional violation because the official's *office* "had been informed of plaintiff's medical situation and [the official] failed to provide preventative measures to prevent recurrence of the past conduct of the hospital staff at Louisiana State Penitentiary."  699 F.2d 744, 747–48 (5th Cir. 1983).

    As in *Whirl*, Amerson argues that the prolonged failure to comply with the state-court order eventually reflected a breach of duty by Shepherd.[5]  But *Whirl* is a 1969 case that explored the precursors to qualified immunity and was quickly called into doubt.  *See Bryan v. Jones*, 530 F.2d 1210, 1213 (5th Cir. 1976) ("Our subsequent decisions on false imprisonment along with the Supreme Court cases on official immunity, however, cast considerable doubt on the wisdom or continued vitality of [*Whirl*].").  Moreover—and more to the point—the decision came before the *Monell* court rejected respondeat superior liability under § 1983 and before *Estelle v. Gamble*, in which the Court established the deliberate indifference standard.  429 U.S. 97, 105

---

[5]Whether the sheriff's department ever received the order was disputed at the hearing.

(1976). Although *Barksdale* came later, the Court concludes that applying either to the facts of this dispute would undercut what is now a fairly well-established body of law.

First, finding Shepherd liable absent any personal knowledge or involvement would subject him to vicarious or respondeat superior liability, and it is now a firmly entrenched rule that "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (citations omitted) (holding that sheriff could not be liable for subordinate's failure to provide medical care). *See also Weathers v. Cano*, 392 F. App'x 339, 341 (5th Cir. 2010) (affirming summary judgment where officer was not personally involved); *Brumfield v. Hollins*, 551 F.3d 322, 329–30 (5th Cir. 2008) (holding that sheriff without personal involvement was entitled to summary judgment); *Pelayo v. U.S. Border Patrol Agent No. 1*, 82 F. App'x 986, 988 (5th Cir. 2003) (same); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (same); *Martin v. Dallas Cnty., Tex.*, 822 F.2d 553, 556 (5th Cir. 1987).[6]

Second, it is equally well established that Amerson must show deliberate indifference to prevail on his § 1983 claim. *Thompson*, 245 F.3d at 458–59. Here, no matter which theory of supervisory liability Amerson may pursue, the record fails to demonstrate that Shepherd was aware of facts sufficient to draw an inference that a substantial risk of serious harm existed, or

---

[6]In some cases, the courts have held that a supervisor without personal involvement in the alleged violation cannot be liable under § 1983 and then alternatively held that the official was also entitled to qualified immunity. *See, e.g., Weathers v. Cano*, 392 F. App'x 339, 341 (5th Cir. 2010) (affirming district court holding that supervisor was not liable under § 1983 and was, alternatively, entitled to summary judgment). Other cases simply hold that the supervisor is entitled to qualified immunity because absent personal involvement, he or she did not violate the plaintiff's rights at the first step of the qualified immunity inquiry. *See*, *e.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 329–30 (5th Cir. 2008).

that he actually drew that inference. *See Brewster*, 587 F.3d at 770 (discussing deliberate indifference standard). As a matter of law, no deliberate indifference has been shown.

Third, finding a causal connection in this case would allow Amerson an end-run around the well-recognized theories of supervisory liability when the officer is not personally involved in the plaintiff's alleged constitutional deprivation—*e.g.* adoption of a policy or failure to train or supervise. *See Porter*, 659 F.3d at 446 (explaining available theories of supervisory liability). And to the extent Amerson implies that he can establish one of these theories through proof of a prolonged failure to discover that he was incarcerated and that he was subject to a commitment order, it is the general rule that "the existence of a constitutionally deficient policy cannot be inferred from a single wrongful act." *Thompkins*, 828 F.2d at 304 (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985) (quoting *Monell*, 436 U.S. at 694) (internal quotation marks omitted)). There is no record of a "pattern of similar violations" in this case. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

Finally, allowing Amerson's argument would arguably elevate statutory violations to constitutional violations. *See Boston v. Lafayette Cty., Miss.*, 744 F. Supp. 746 751–52 (N.D. Miss. 1990) (rejecting plaintiff's argument that Miss. Code. Ann. §§ 19-25-35 and 19-25-69 created a procedural due process right; "[T]he court cannot infer that Mississippi's legislature intended to constitutionalize state law through these statutes and expand liability under § 1983."). The question is not whether Shepherd violated the court order but instead whether Shepherd violated Amerson's right to medical care. To prove that, Amerson must show deliberate indifference.[7]

---

[7]To the extent *Whirl* and *Barksdale* remained valid, the Supreme Court's opinion in *Ashcroft v. Iqbal*, calls them into further doubt. There, the Court appeared to reject "supervisory

In sum, Amerson failed to meet his burden to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial'" concerning Shepherd's personal involvement or causally connected conduct. *Thompkins*, 828 F.2d at 303–04 (directing district court on remand to enter judgment for defendant sheriff if it determined he was unaware of the prisoner's condition and requests for medical treatment); *see also Signorelli v. Stalder*, 280 F. App'x 356, 358 (5th Cir. 2008) (affirming summary judgment dismissal of supervisory liability claims against secretary of Department of Corrections, sheriff and prison warden where plaintiff presented no evidence of their personal involvement in inmate's medical treatment).[8]

---

liability" and limit an official's liability to his own misconduct. 129 S. Ct. at 1949 ("In a § 1983 suit . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *see also id.* at 1957-58 (Souter, J., dissenting) (criticizing the majority's "do[ing] away with supervisory liability" and discussing supervisory liability in various situations in which the supervisor, for example, knew of the subordinate's unconstitutional action and acquiesced or was reckless in his supervision). In *Carnaby v. City of Houston*, the Fifth Circuit apparently followed *Iqbal*'s rejection of supervisory liability, stating:

> Under § 1983, however, a government official can be held liable only for his own misconduct. *See Ashcroft v. Iqbal*, ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Beyond his own conduct, the extent of his liability as a supervisor is similar to that of a municipality that implements an unconstitutional policy.

636 F.3d 183, 189 (5th Cir. 2011).

[8] Assuming the conduct was discretionary, then Shepherd did not "violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. At the time of these alleged incidents, it was clearly established law that a sheriff "not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if he promulgated a causally connected unconstitutional policy or failed to train or supervise in a causally relevant way." *Brumfield*, 551 F.3d at 329 (discussing the clearly established law). Moreover, the "clearly established law required that in a claim alleging failure to promulgate policy as a basis for § 1983 liability, the failure must be 'an intentional choice' and amount to subjective deliberate indifference." *Id.* at 328. Applied here, Amerson fails to show that Shepherd's actions or inactions are other than objectively reasonable. *Thompson*, 245 F.3d at 462–63.

C. Punitive Damages

Punitive damages are recoverable from a defendant sued in his individual capacity under Section 1983. *Brown v. Bryan County, Okla*. 67 F.3d 1174, 1181 (5th Cir.1995). Because the Court declines to find Shepherd individually liable, however, Amerson's claim for punitive damages is dismissed.

IV. Conclusion

For the foregoing reasons, Defendant Shepherd's Motion for Summary Judgment is granted. All claims against Shepherd in his individual capacity are hereby dismissed.

**SO ORDERED AND ADJUDGED** this the 21st day of March, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE