IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

KENNY AMERSON                                                           PLAINTIFF

VS.                                               CIVIL ACTION NO. 3:09cv53-DPJ-FKB

PIKE COUNTY, MISSISSIPPI, et al.                                DEFENDANTS

ORDER

This civil-rights case is before the Court on the summary judgment motion [66] of Defendants Pike County, Mississippi, and Sheriff Mark Shepherd, in his official capacity. Plaintiff has responded [70] in opposition to Defendants' motion. Having considered the parties' memoranda and submissions, along with the pertinent authorities, the Court finds that Defendants' motion should be granted.

I.     Facts and Procedural History

Plaintiff Kenny Amerson was arrested in November 2004 and held in the Pike County Jail. Although Circuit Court Judge Michael Taylor first ordered a mental evaluation of Amerson on March 14, 2005, the evaluation was not performed until December 20, 2005. Dr. Beverly Smallwood later found Amerson psychotic and likely schizophrenic and recommended inpatient treatment at a state hospital to restore his competency to stand trial. Pl.'s Resp. [70] Ex. C. On April 18, 2006, after reviewing Smallwood's report, Judge Taylor found Amerson was a danger to himself and mentally incompetent to stand trial or to make a rational defense and ordered Amerson transported to the Mississippi State Hospital at Whitfield for treatment. *Id.*, Ex. D. A dispute exists whether the hospital denied Amerson's admission, but the parties agree Amerson was subsequently returned to the Pike County Jail where he remained until the charges against him were dropped in March 2007.

Amerson sued Pike County, Mississippi, the Pike County Sheriff's Department, and Sheriff Mark Shepherd in his official and individual capacities, generally asserting inadequate medical care. He couched most of his constitutional claims under 42 U.S.C. § 1983 and also brought certain state-law claims.

On April 8, 2009, the Court dismissed the Pike County Sheriff's Department. Thereafter, Shepherd moved for summary judgment on the individual-capacity claims asserting his right to qualified immunity, but the Court found that discovery was warranted and granted Amerson's Rule 56(d) motion. Despite obtaining the right to conduct further discovery, Amerson conduct none, leaving the record unclear as to Shepherd's personal involvement in Amerson's incarceration. For that reason, the Court held an evidentiary hearing to determine the extent, if any, to which Shepherd was involved in the alleged violations. And upon finding that Shepherd had no knowledge of Amerson, the Court granted Shepherd's motion and dismissed Amerson's federal and state-law claims against Shepherd in his individual-capacity. Order [60] Mar. 21, 2012.

On October 4, 2012, Pike County and Shepherd, now in his official capacity, moved for summary judgment on all of Amerson's claims, arguing that there is no basis for imposing municipal liability under § 1983 and that the Mississippi Torts Claims Act bars Amerson's state-law claims, all of which arose while Amerson was incarcerated. Although Amerson has responded in opposition, he has only partially addressed Defendants' arguments. The Court finds that it has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.   Analysis

   A.   Federal Claims

In his Complaint, Amerson alleges that Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights by denying him adequate medical care while incarcerated. Two preliminary matters must be addressed before turning to the merits of the claims. First, claims based on alleged constitutional violations must generally be pursued through 42 U.S.C. § 1983. *See Neyland v. Henley–Young Juvenile Justice Ctr.*, No. 3:09cv520-DPJ-FKB, 2011 WL 1980276, at *3 (S.D. Miss. May 20, 2011) (recognizing that claims for constitutional violations must be brought under § 1983). Yet, Amerson has pleaded only two of his four federal counts through § 1983. For purposes of this motion only, the Court will construe those claims as if Amerson brought them under § 1983. Second, an official-capacity claim against a government official is essentially a claim against the government itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, Amerson's official-capacity claims against Shepherd are duplicative of his claims against Pike County, and the Court will analyze the claims against both Defendants under the municipal-liability framework.

   1.   Municipal Liability for Constitutional Violations

Section 1983 precludes deprivation of a right "secured by the Constitution and the laws" of the United States by a person acting under color of state law. 42 U.S.C. § 1983; *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1988). A municipality may be held liable as a "person" under § 1983, but that liability may not rest on *respondeat superior* and instead must be premised upon "'some official action or imprimatur.'" *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). In order to

impose § 1983 liability against a municipality, "[a] plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Id.* at 541–42 (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)). A plaintiff may illustrate official policy by "point[ing] to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citing *Webster v. City of Hous.*, 735 F.3d 838, 841 (5th Cir. 1984) (en banc)). Alternatively, a plaintiff may point to a "'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* at 169 (quoting *Webster*, 735 F.3d at 841).

Amerson first fails to offer summary-judgment evidence identifying any official policy that caused his constitutional violations. Instead Amerson points to official policies that aim to protect against constitutionally inadequate medical care and the failure of Defendants' employees to follow those policies in this instance. But the fact that some municipal employees failed to adhere to municipal policy does not satisfy Amerson's burden of showing that "some official policy, cause[d] an employee to violate another's constitutional rights." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 751 (1989) (citation and quotations omitted); *see also Williams v. City of Cleveland*, No. 2:10cv215-SA-JMV, 2012 WL 3614418, at *17 (N.D. Miss. Aug. 21, 2012) (holding that employee's violation of municipal policy creates no liability for municipality under § 1983). The imposition of municipal liability under these circumstances would amount to *respondeat superior* liability, which is not permitted under § 1983.

Amerson likewise fails to identify a custom amounting to official-municipal policy. A custom may be shown in two ways: (1) a single act of unconstitutional conduct by a policymaker, or (2) a pattern of constitutional violations by municipal employees. *Zarnow*, 614 F.3d at 169. Amerson acknowledges that no such pattern exists, so he focuses his argument on Shepherd, the undisputed policymaker with respect to the jail. According to Amerson, Shepherd violated Amerson's constitutional rights by failing to follow his own policies or state laws requiring sheriffs to execute court orders. The problem with this argument is Amerson's failure to ever prove Shepherd knew Amerson was being held at the jail. At the qualified immunity stage, the Court found—after conducting an evidentiary hearing—that Shepherd "had no knowledge of Amerson or his plight." Order [60] at 7–11. And now when faced with the municipality's dispositive motion, Amerson still fails to offer any evidence that Shepherd acted unconstitutionally. Unsupported arguments from counsel will not create triable issues. *TIG Ins. Co.*, 276 F.3d at 759.

Finally, even assuming Amerson could identify a policy or custom that caused his harm, he must identify a municipal policymaker who could be held responsible, through actual or constructive knowledge, for enforcing that policy or custom. *Piotrowski*, 237 F.3d at 578–79. As stated by the Fifth Circuit in *Piotrowski*, "[t]his is not an opaque requirement . . . . Actual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Id.* at 579 (quoting *Webster*, 735 F.2d at 842). Amerson addresses this point by arguing that Shepherd's acts create official policy and that Shepherd had constructive knowledge that Amerson's rights were violated. But again, conclusory arguments from counsel are no substitute

6

for evidence creating a genuine dispute of material fact.  And on this point, Amerson failed both in discovery and in an evidentiary hearing to develop summary-judgment evidence of Shepherd's knowledge.  At best, Amerson argues that the duration of the constitutional violations should qualify as constructive knowledge, but this does not rise to the level of a custom that was the "'subject of prolonged public discussion or of a high degree of publicity.'" *Pineda*, 291 F.3d at 330 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc)).  Thus, Amerson has failed to identify a basis for holding Defendants liable under § 1983.

### 2. Failure to Train

Amerson also attempts to establish municipal liability by asserting that Defendants maintained a policy of inadequate training or failed to adopt a preventative policy.  To pursue a failure-to-train claim against a municipality, Amerson must show:  "(1) the training procedures were inadequate; (2) the [] policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate policy directly caused [Amerson's] injury." *Carnaby v. City of Hous.*, 636 F.3d 183, 189 (5th Cir. 2011) (citing *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000)).

Amerson fails the first two prongs and treats the third in conclusory fashion.  First, he has not explained how Defendants' training procedures were inadequate, providing nothing more than the bald argument that an inadequacy existed and that it caused Amerson's rights to be violated. *See Zarnow*, 614 F.3d at 161 ("'[A] plaintiff must allege with specificity how a particular training program is defective.'" (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005))).  Second, Amerson fails to establish deliberate indifference by a policymaker.  Proof of deliberate indifference ordinarily requires proof of a "pattern of similar

constitutional violations by untrained employees . . . for purposes of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citation omitted). Amerson makes no such showing, and the facts fail to support the narrow exception allowing single-incident liability for the failure to train. *Id.* at 1361 ("[T]he unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989))). Thus, the failure-to-train claim must be dismissed.[1]

B. State-Law Claims

The Mississippi Torts Claim Act provides immunity for governmental employees acting within the course and scope of their employment or duties for any claim "[o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution . . . ." Miss. Code. Ann. § 11-46-9(1)(m); *see also Johnson v. Epps*, 479 F. App'x 583, 592–93 & nn.41–42 (5th Cir. 2012) (affirming dismissal of negligence claims against governmental entities pursuant to section 11-46-9(1)(m)). There is no factual dispute that Amerson's claims accrued while he was incarcerated. Nor has Amerson pointed to any reason why Shepherd's conduct in his official capacity would not be within the scope of his employment. Amerson ignored these arguments in his summary-judgment response, and the Court finds that they are well taken. Defendants are therefore immune from Amerson's state-law tort claims.

---

[1] In his Complaint, Amerson also alleged that Defendants ratified the constitutional violations, but he fails to offer any evidence substantiating that claim. *See, e.g.*, *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) ("[O]ur precedent has limited the theory of ratification to extreme factual situations." (citation and quotations omitted)).

IV.     Conclusion

The care Amerson received—or lack of it—is troubling.  But the Court must consider the evidence against the defendants Amerson elected to sue.  Having failed to develop evidence to overcome Shepherd's right to qualified immunity, Amerson was required to develop evidence supporting municipal liability.  No such evidence was offered, so Defendants' Motion for Summary Judgment [66] must be granted.

The Court has considered all of the parties' arguments.  Those not addressed would not change the result.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 3rd day of January, 2013.

                                        s/ *Daniel P. Jordan III*
                                        UNITED STATES DISTRICT JUDGE